LARRY STEELE AND JOE SMITH, *Appellants,* v. MISSOURI PACIFIC RAILROAD COMPANY, *Appellee.*

No. 54,871

IN THE MATTER OF APPLICATION FOR EXERCISE OF THE RIGHT OF EMINENT DOMAIN.

MISSOURI PACIFIC RAILROAD COMPANY, *Appellee,* v. GANO TSCHUDY, *et al., Appellants.*

(659 P.2d 217)

Opinion filed February 19, 1983.

*K. Mike Kimball,* of Hathaway & Kimball, of Ulysses, argued the cause and was on the briefs for the appellants.

*Phillip R. Fields,* of Gott, Young & Bogle, P.A., of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FLOYD H. COFFMAN, District Judge, Assigned: These cases were consolidated for consideration on appeal. This is another chapter in the litigation arising from an eminent domain proceeding filed by the Missouri Pacific Railroad (Mo-Pac) in Greeley County on August 15, 1979, in accordance with K.S.A. 26-501 *et seq.* (Eminent Domain Procedure Act of 1963) for the

"purpose of proper construction of the railroad and the security of the road in that it is necessary that plaintiff construct a dust levee as a part of and along its present right of way in Greeley County, Kansas, in order to protect the railroad and its operation from excessive drifts of dust and other debris during windstorms and periods of drought."

This court in *Missouri Pacific Railroad v. Board of Greeley County Comm'rs*, 231 Kan. 225, 643 P.2d 188 (1982), found the "Greeley County Dirt Embankment Act," adopted effective March 1, 1980, and spawned by the dust levee planning, to be invalid.

The factual situation, as briefly stated by Justice Fromme in 231 Kan. at 228, is repeated for convenience:

"Mo-Pac began acquiring a strip of land along the north side of its present right-of-way in Greeley County by both private contract and by eminent domain, said land to be used in the construction of a 'dust levee' to control dust buildup and snow drifts in its trackbed along a seven-mile stretch of its right-of-way in the extreme western part of Greeley County which borders Colorado. Similar 'dust levees' have been previously constructed along the tracks in eastern Colorado. The land being acquired by the railroad consists of a strip 100 feet wide adjacent to the north right-of-way line. The 'dust levee' to be constructed will be 11 feet high and 36 feet wide at the base. The crown will be two or three feet wide and the slope will be 1 ½ to 1. Borrow pits on either side of the levee will be 12 feet wide extending out from the base of the levee and not more than five feet deep."

We turn first to the appeal docketed August 17, 1982, in the eminent domain proceeding filed August 15, 1979. Larry D. Steele and Joe Smith, plaintiffs in the consolidated injunction proceedings, along with others by the same family names, answered on September 6, 1979, challenging the jurisdiction of the court and in the alternative praying for an order denying Mo-Pac the power of eminent domain. Briefs of the parties on the issues raised by the answer appear in the trial court file prior to a REQUEST FOR PREREQUISITE FINDINGS TO ALLOW INTERLOCUTORY APPEAL filed February 26, 1980, by Larry D. Steele and Joe Smith. Letters dated March 12 and 13, to Judge Vance from counsel for condemnor and counsel for the answering defendants regarding the proper interpretation of K.S.A. 26-504 were filed April 9, 1980. Eventually, by order dated June 24, 1980, Judge Vance found:

1. Mo-Pac had the power of eminent domain, and that the taking was necessary of its lawful and corporate purposes;

2. No interlocutory appeal shall be allowed;

3. Three named appraisers be appointed to report on or before August 18, 1980, as agreed by the parties.

On August 18, 1980, Judge Vance found on joint oral application of all counsel that "the time for filing the final report of the appraisers should be and is hereby extended until further order from the Court, and the appraisers shall withhold the filing of their final report until a new date for filing shall be ordered . . . ."

The trial court having been affirmed in *Missouri Pacific Railroad v. Board of Greeley County Comm'rs,* 231 Kan. 225, Judge Nyswonger, upon motion of Mo-Pac argued June 7, 1982, directed the appraisers "to proceed with the filing their report" pursuant to statute and directed counsel for the railroad "to provide certified copy of this Order to the Court-appointed appraisers" and that upon receipt thereof, "the appraisers shall file their report with the Clerk of the District Court." On June 28, 1982, Judge Nyswonger by Memorandum Decision overruled defendant-landowners' Motion for Relief from the previous orders of the court and ordered that "plaintiff's Motion for Order Directing the Appraiser's Report to be filed forthwith and condemnation proceedings going forward according to statute should be granted." This Memorandum Decision was filed contemporaneously with a Memorandum Decision dismissing the injunction action which will be discussed later.

The appeal from the condemnation proceeding is dismissed. An order granting from the verified petition the power of eminent domain and that the taking is necessary to the lawful corporate purposes of the plaintiff under provisions of the Eminent Domain Procedure Act, K.S.A. 26-504 "shall not be considered a final order for the purpose of appeal to the supreme court." *Concerned Citizens, United, Inc. v. Kansas Power & Light Co.,* 215 Kan. 218, 227, 523 P.2d 755 (1974); see also *Kansas Gas & Electric Co. v. Winn,* 227 Kan. 101, 605 P.2d 125 (1980).

We turn to the appeal from the dismissal of the separate injunction action wherein the landowners challenge the legality of the condemnation as suggested in *Concerned Citizens,* 215 Kan. at 226-27, and *Winn,* 227 Kan. at 106.

Although the injunction action was docketed and filed Sep-

tember 7, 1979, the only pleadings of the parties submitted in the record on appeal are condemnor's answer filed September 19, 1979, and the plaintiffs' Second Amended Petition for Injunction filed April 26, 1982. Also, on April 26, 1982, plaintiff-landowners filed a Motion for Summary Judgment alleging as uncontroverted facts that:

A. Board of Directors of Mo-Pac had "not passed a resolution directing the corporation to exercise its power of eminent domain or to change the roadbed, or roadline or part thereof . . . ."

B. Mo-Pac is a Delaware corporation.

C. The Delaware corporation first became authorized to do business in Kansas in 1978 and had not filed with the Secretary of State a resolution "stipulating that said Delaware corporation shall be subject to . . . K.S.A. 66-507."

Defendants' response admitted facts alleged in A, B, and C and attached a statement from the Secretary of State that the Delaware corporation is in good standing for the reason that it "has timely filed all reports due."

Defendants' Motion for Summary Judgment filed May 17, 1982, to which plaintiffs did not respond, as permitted by Supreme Court Rule 141, 230 Kan. lxxxv, alleges uncontroverted facts as follows:

1. The court ruled on June 24, 1980, that Mo-Pac has the power of eminent domain, and that the taking is necessary for the lawful and corporate purposes of the plaintiff in the condemnation action.

2. That appraisers were appointed but action was stayed by agreement pending determination of the validity of the Greeley County Dirt Embankment Act.

3. That said act was found to be unconstitutional as per *Missouri Pacific Railroad v. Board of Greeley County Comm'rs*, 231 Kan. 225.

4. That Mo-Pac is desirous of proceeding without further delay.

5. "That the construction of a dust levee by this party does not involve a change in the roadbed or road line in Greeley County, Kansas."

6. "Plaintiffs have acknowledged . . . that this party does not intend to utilize the real estate to be taken in the eminent

domain action for the purpose of constructing any additional railroad trackage."

7. "That the Missouri Pacific Railroad Company is a foreign corporation lawfully doing business in the State of Kansas."

After oral arguments on June 7, 1982, the trial court's Memorandum Opinion dated June 29, 1982, recited *inter alia:*

"The parties have by their pleadings filed herein and by statements made at the time of oral arguments stipulated and agreed that the issues which the Court must consider are found solely upon statutory interpretation and whether same is applicable in this instance. The statutes which the parties stipulate that the Court must construe are K.S.A. 66-501; K.S.A. 66-502; and K.S.A. 66-507.

. . . . .

". . . Both parties, however, do agree that a merger between the Missouri Pacific Railroad Company as a Missouri corporation took place with the Missouri Pacific Railroad Company, a Delaware Corporation."

A transcription of oral argument is not included in the appeal record.

The trial court considered the motions of the parties for summary judgment, the oral arguments, including stipulations, of the parties and determined:

1. Mo-Pac was in compliance with K.S.A. 66-501 in taking an additional 100-foot strip of land to build a dust levee.

2. No vote of the board of directors was necessary as required by K.S.A. 66-502 for the reason that Mo-Pac is not changing the roadbed, roadline, or any part thereof.

3. The reorganization of the railroad from the Missouri corporation into the Delaware corporation resulted in a merger whereby the assets were transferred by exchange of stock in the new corporation for the Missouri corporation; a purchase or lease of the railroad as anticipated by the requirements of K.S.A. 66-507 did not occur and therefore compliance with the second *"Provided further"* portion of the statute was unnecessary.

We agree.

Appellant-landowners contend the statute entitled Powers of Railway Corporation, K.S.A. 66-501 *Third,* does not authorize the taking of the additional 100-foot-wide strip along the original right-of-way for the use anticipated. The railroad is empowered by the statute:

"To lay out its road, not exceeding one hundred feet in width, and to construct the same; and for the purpose of cuttings and embankments, to take as much more land as may be necessary for the proper construction and security of the road."

The railroad established in the eminent domain proceeding by its verified petition that the taking and construction of the dust levee was necessary for the "purpose of proper construction" and "security of the road." Under Kansas law a railroad with power of eminent domain is vested with reasonable discretion to determine the necessity for the taking of land for its lawful corporate purposes, and when such discretion is exercised it will not be disturbed on judicial review unless fraud, bad faith or an abuse of discretion is shown. In an injunction action the burden of proof is upon those attacking the decision of the railroad. *Concerned Citizens*, 215 Kan. at 229. Neither fraud, bad faith nor abuse of discretion are established by the appeal record submitted by agreement "solely upon statutory interpretation and whether same is applicable in this instance."

Statutes granting the right of eminent domain should never be enlarged by implication. *Strain v. Cities Service Gas Co.*, 148 Kan. 393, 396, 83 P.2d 124 (1938). But a technique for improvement in the construction of a railroad will not be precluded because it is novel if it may reasonably come within the authority granted. In the *Strain* case Cities Service was attempting to use the underground space, or cavity, for storage, a purpose clearly not anticipated. K.S.A. 17-618 authorized any oil company, pipeline company, or gas company desiring the right to conduct oil in pipes or to conduct gas in pipes to condemn right-of-way easements for that purpose.

Landowners' contention that the power of eminent domain is exhausted after the initial construction of the railroad overlooks the opinion by Justice Burch in *Ritchie v. Atchison, T. & S. F. Rly. Co.*, 128 Kan. 637, 643, 279 Pac. 15 (1929), that "[t]he court is already committed to the doctrine that power of eminent domain is not exhausted by a single exercise." The Colorado Supreme Court has interpreted the Colorado statute as authorizing Mo-Pac to acquire lands "outside its statutory [200-foot-wide] right-of-way" by condemnation for the construction of dust levees. *Buck v. Dist. Ct.*, 199 Colo. 344, 348, 608 P.2d 350 (1980). The Colorado statute grants a railroad the power "'[t]o lay out its road, not exceeding two hundred feet in width, and to construct the same; and for the purpose of cuttings and embankments to take as much more land as may be necessary for the proper construction and security of the railway.'" 199 Colo. at 347.

Landowners contend the construction of the dust levee is for the sole purpose of reducing maintenance costs and is not "necessary for the . . . proper construction . . . and the security of the road" as set out in the eminent domain petition and as authorized by K.S.A. 66-501 *Third*. Construction is proper which permits the railroad to operate most efficiently in the interests of the public users of the services who must "pay the freight" as established, or authorized, by the proper regulatory agency. Any ultimate reduction in maintenance costs should eventually be reflected in authorized freight rates.

Since the construction of a dust levee does not involve a change in roadbed or roadline, the provisions of K.S.A. 66-502 requiring a ⅔ vote of the board do not apply in regard to this condemnation proceeding and compliance by Mo-Pac is unnecessary.

The statute regulating the purchase or lease of a railroad by any railroad corporation of any other state, K.S.A. 66-507, requires such corporation to file a certified copy of a resolution of its board of directors (1) designating a resident process agreement, and (2) stipulating "that said company shall be and become subject to the provisions of this act." However, the trial court found that the parties agree that in this situation a merger took place between the Missouri corporation and the Delaware corporation organized in 1978. Under Kansas law a merger of two corporations results in a transfer of the property to the new corporation which retains the name and corporate identity and assumes the rights and responsibilities of the former corporation. *Jackson v. Insurance Co.,* 101 Kan. 383, 167 Pac. 1046 (1917); *Micheaux v. Amalgamated Meatcutters & Butcher Workmen,* 231 Kan. 791, 797, 648 P.2d 722 (1982). A sale of the railroad did not occur and compliance with the provisions of K.S.A. 66-507 was unnecessary.

The appellant-landowners belatedly and emphatically argue that the Eminent Domain Procedure Act, K.S.A. 26-501 *et seq.,* is unconstitutional, because it fails to meet the "due process" requirements of the Fourteenth Amendment to the United States Constitution, which provides:

"[N]or shall any State deprive any person of . . . property, without due process of law; nor deny to any person within its jurisdiction the *equal* protection of the laws." Emphasis supplied.

While the Eminent Domain Procedure Act does not provide a forum for litigation of the rights claimed by landowners, this court has repeatedly held that such rights may be litigated in a separate injunction action under the civil code of procedure. *Concerned Citizens,* 215 Kan. at 226; *Winn,* 227 Kan. at 106. Thus, the property owners' right to due process is satisfied. See also 27 Am. Jur. 2d, Eminent Domain § 376, pp. 241-43, quoted by Justice McFarland in *City of Manhattan v. Kent,* 228 Kan. 513, 515-16, 618 P.2d 1180 (1980).

Appellant-landowners express their frustration with the provisions of K.S.A. 26-504 which provides the procedures for appeal by condemnor from an adverse ruling but denies a condemnee a hearing or the right to appeal from a decision favorable to a petitioner. Of course, appellants were aware that their rights may be protected by the separate injunction action which they chose to file on September 9, 1979, and before any of their land was taken under K.S.A. 26-504 by the filing of the report of the appraisers. Filing of the report by the appraisers appointed June 24, 1980, has been stayed pending a final decision, first in *Missouri Pacific Railroad v. Board of Greeley County Comm'rs,* 231 Kan. 225 (decided April 3, 1982), and now in these appeals.

While the landowners were not granted an evidentiary hearing by K.S.A. 26-504, the Eminent Domain Procedure Act, this right is protected by the injunction proceeding as was held by Justice Schroeder, (now Chief Justice) in *Concerned Citizens,* 215 Kan. 218, and apparently in the dust levee case across the state line in Kiowa County, Colorado. The Colorado Supreme Court stated:

"The record shows that the levees can reasonably be expected to enhance the operational efficiency and safety of the public rail services provided by the respondent railroad." *Buck v. Dist. Ct.,* 199 Colo. at 346.

The decision of the trial court is affirmed in both cases. In the eminent domain case (No. 54,871), appeal is denied and the case is remanded with directions. The appraisers should be instructed to report on a day to be specified by the trial court to be not later than twenty days following the date the mandate in this case is filed in the district court, subject to a reasonable extension of time for good cause shown as provided by K.S.A. 26-504.